# United States Court of Appeals
# for the District of Columbia Circuit

### No. 25-7033

GLOBAL VOICE GROUP SA,

*Plaintiff-Appellant,*

*v.*

REPUBLIC OF GUINEA,

*Defendant-Appellee.*

_____

*On Appeal from the United States District Court for the District of Columbia in No. 1:22-cv-02100-JMC, Honorable Jia M. Cobb, U.S. District Judge.*

## BRIEF FOR APPELLEE

JAMES H. BOYKIN, III (admitted)
CARTER ROSEKRANS (admitted)
WINTHROP JORDAN (admitted)
KAYAHAN CANTEKIN (on brief)
HUGHES HUBBARD & REED LLP
1775 I Street NW, Suite 600
Washington, DC 20006
(202) 721-4600
james.boykin@hugheshubbard.com
carter.rosekrans@hugheshubbard.com
winthrop.jordan@hugheshubbard.com
kayahan.cantekin@hugheshubbard.com

*Counsel for Appellee*

July 17, 2025

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

## A. Parties, Intervenors, and *Amici Curiae*

The following parties appeared before the District Court, and are parties in this Court:

1) Global Voice Group SA ("Global Voice"), as Petitioner before the District Court and Appellant before this Court; and

2) the Republic of Guinea (the "Republic"), as Respondent before the District Court and Appellee before this Court.

There were no intervenors or *amici* before the District Court and the Republic is unaware of any *amici* or intervenors before this Court.

## B. Rulings Under Review

The rulings under review are the District Court's Order (J.A.__[ECF.No.43]) and Memorandum Opinion (J.A.__[ECF.No.44]), entered by Judge Jia M. Cobb on February 18, 2025, granting the Republic's motion to dismiss and denying Global Voice's motion for default judgment or summary judgment.

## C. Related Cases

This case has not previously been before this Court or any other U.S. court. The Republic is not aware of any related cases before this Court, any other United States court of appeals, or any other court in the District of Columbia.

None of the cases identified by Global Voice are "Related Cases" because they do not involve "substantially the same parties and the same or similar issues." D.C. Circuit Rule 28(a)(1)(C).

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES.....................i

    A.    Parties, Intervenors, and Amici Curiae ........................................i

    B.    Rulings Under Review ...............................................................i

    C.    Related Cases .............................................................................i

GLOSSARY....................................................................................................xi

JURISDICTIONAL STATEMENT .................................................................1

STATEMENT OF THE ISSUES......................................................................2

STATUTES AND REGULATIONS..................................................................2

STATEMENT OF THE CASE..........................................................................3

    A.    The Partnership Agreement ......................................................3

    B.    Modifications to the Partnership Agreement.............................4

    C.    The Arbitration .........................................................................5

    D.    The French Proceedings ............................................................8

    E.    The U.S. Proceedings.................................................................9

SUMMARY OF ARGUMENT ........................................................................12

STANDARD OF REVIEW ..............................................................................13

ARGUMENT ....................................................................................................13

I.    THE DISTRICT COURT CORRECTLY DECLINED
    TO EXERCISE SUBJECT MATTER JURISDICTION
    UNDER THE FSIA'S ARBITRATION EXCEPTION......................13

    A.    The District Court Correctly Applied The Burden-
    Shifting Evidentiary Framework. ..............................................15

B.    The Power To Determine Whether The FSIA
Provides Subject Matter Jurisdiction Belongs
Solely To United States Courts..................................................24

C.    The Court's Subject Matter Jurisdiction
Determination Under The FSIA Differs From
Competency To Review An Award.........................................26

D.    The French Judgment Cannot Have Issue
Preclusive Effect. ......................................................................29

E.    The Republic And Global Voice Could Not Have,
And Did Not, Agree To Delegate The Question Of
The Existence Of An Arbitration Agreement To
The Tribunal. ............................................................................37

II.    THE DISTRICT COURT CORRECTLY DECLINED
TO EXERCISE SUBJECT MATTER JURISDICTION
UNDER THE FSIA'S WAIVER EXCEPTION.................................51

CONCLUSION ................................................................................................55

CERTIFICATE OF COMPLIANCE.......................................................56

CERTIFICATE OF SERVICE ..............................................................57

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Aenergy, S.A. v. Republic of Angola*,
123 F.4th 1351 (D.C. Cir. 2024)............................................29, 30, 31

*Ahlstrom v. DHI Mortg. Co.*,
21 F.4th 631 (9th Cir. 2021) ...............................................................44

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*,
663 F. Supp. 3d 11 (D.D.C. 2023), *rev'd* —F.4th—, 2025 WL
1934050 (D.C. Cir. July 15, 2025) ....................................................48

*\*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*,
No. 24-7030, —F.4th—, 2025 WL 1934050 (D.C. Cir. July 15,
2025) .......................................................................14, 15, 53, 54

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)............................................................14, 25, 40

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)............................................................................31

*AT&T Techs., Inc. v. Comm'n Workers of Am.*,
475 U.S. 643 (1986)......................................................................37, 38

*In re: Auto. Parts Antitrust Litig.*,
951 F.3d 377 (6th Cir. 2020) .............................................................44

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015)............................................................................30

*Balkan Energy Ltd. v. Republic of Ghana*,
302 F. Supp. 3d 144 (D.D.C. 2018)...................................................36

*Broidy Cap. Mgmt. LLC v. Muzin*,
61 F.4th 984 (D.C. Cir. 2023)............................................................51

*\*Chevron Corp. v. Republic of Ecuador*,
795 F.3d 200 (D.C. Cir. 2015)........................... 14, 15, 16, 18, 21, 24, 38, 40, 41

v

*Coinbase, Inc. v. Suski*,
    602 U.S. 143 (2024)......................................................................39

*Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*,
    66 F.4th 876 (11th Cir. 2023) ...................................................27

*Creighton Ltd. v. Gov't of Qatar*,
    181 F.3d 118 (D.C. Cir. 1999)...............................51, 52, 53, 54, 55

*Davis v. Chevy Chase Fin., Ltd.*,
    667 F.2d 160 (D.C. Cir. 1981) ..................................................50

*Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n,*
    *AFL-CIO v. Liberty Mar. Corp.*,
    998 F.3d 449 (D.C. Cir. 2021)..............................................38, 44

*Doctor's Assocs., Inc. v. Alemayehu*,
    934 F.3d 245 (2d Cir. 2019) ......................................................44

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003)..................................................................33

*Earle v. Dist. of Columbia*,
    707 F.3d 299 (D.C. Cir. 2012)..................................................22

*Entes Indus. Plants, Constr. & Erection Contracting Co. Inc. v.*
    *Kyrgyz Republic*,
    No. CV 18-2228 (RC), 2019 WL 5268900 (D.D.C. Oct. 17, 2019) .................34

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
    156 F.3d 310 (2d Cir. 1998) ......................................................28

*Fedor v. United Healthcare, Inc.*,
    976 F.3d 1100 (10th Cir. 2020) ................................................45

*Films By Jove, Inc. v. Berov*,
    250 F. Supp. 2d 156 (E.D.N.Y. 2003) .......................................32

*\*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)................................ 37, 38, 39, 43, 44, 46, 49, 50

*Foremost-McKesson, Inc. v. Islamic Republic of Iran,*
905 F.2d 438 (D.C. Cir. 1990)................................................................51

*Gater Assets Ltd. v. Moldovagaz,*
2 F.4th 42 (2d Cir. 2021) ........................................................................18

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
561 U.S. 287 (2010)................................................................................43

*Hall St. Assocs., LLC v. Mattel, Inc.,*
552 U.S. 576 (2008)................................................................................39

*Henderson ex rel. Henderson v. Shinseki,*
562 U.S. 428 (2011)....................................................................14, 25, 34

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
586 U.S. 63 (2019)..............................................................37, 39, 43, 44

*Hulley Enterprises Ltd. v. Russian Federation,*
No. 1:14-cv-1996, 2023 WL 8005099 (D.D.C. Nov. 17, 2023) ........41

*Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.,*
763 F. Supp. 2d 12 (D.D.C. 2011)........................................................32

*Ivanenko v. Yanukovich,*
995 F.3d 232 (D.C. Cir. 2021)..............................................................51

*Kaplan v. First Options of Chicago, Inc.,*
19 F.3d 1503 (3d Cir. 1994) .................................................................50

*Khochinsky v. Republic of Poland,*
1 F.4th 1 (D.C. Cir. 2021)......................................................................51

*Laker Airways Ltd. v. Sabena, Belgian World Airlines,*
731 F.2d 909, 931 (D.C. Cir. 1984)......................................................33

*LLC SPC Stileks v. Republic of Moldova,*
985 F.3d 871 (D.C. Cir. 2021)....................................................38, 40, 41

*Martin v. Dep't of Just.,*
488 F.3d 446 (D.C. Cir. 2007)...............................................................29

*Microchip Tech., Inc. v. U.S. Phillips Corp.*,
367 F.3d 1350 (Fed. Cir. 2004) .........................................................45

*Murphy Expl. & Prod. Co. v. U.S. Dep't of the Interior*,
252 F.3d 473 (D.C. Cir. 2001).............................................................25

*Nebraska Mach. Co. v. Cargotec Sols., LLC*,
762 F.3d 737 (8th Cir. 2014) ..............................................................44

*\*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
112 F.4th 1088 (D.C. Cir. 2024)................. 14, 15, 16, 18, 24, 38, 41, 52, 53, 54

*Olin Holdings Ltd. v. Libya*,
73 F.4th 92 (2d Cir. 2023) ...........................................................41, 42, 44, 45

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979)............................................................................34

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
551 U.S. 224 (2007) (Breyer, J., dissenting) .....................................33

*Price v. Socialist People's Libyan Arab Jamahiriya*,
389 F.3d 192 (D.C. Cir. 2004)............................................................46

*Princz v. Federal Republic of Germany*,
26 F.3d 1166 (D.C. Cir. 1994)............................................................52

*Proc. & Indus. Dev. Ltd. v. Federal Republic of Nigeria*,
962 F.3d 576 (D.C. Cir. 2020)............................................................40

*Proc. & Indus. Devs. Ltd. v. Federal Republic of Nigeria*,
27 F.4th 771 (D.C. Cir. 2022)........................................28, 40, 52, 54

*Ramey v. Bowsher*,
9 F.3d 133 (D.C. Cir. 1993)................................................................26

*Rent–A–Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)..............................................................................39

*Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*,
993 F.3d 253 (4th Cir. 2021) ..............................................................44

*Schubarth v. BVVG Bodenverwertungs-und-Verwaltungs GmbH,*
140 F.4th 500 (D.C. Cir. 2025)............................................................13

*Seetransport Wiking Trader v. Navimpex Centrala,*
989 F.2d 572 (2d Cir. 1993) .........................................................53, 54

*Simon v. Republic of Hungary,*
77 F.4th 1077 (D.C. Cir. 2023), *rev'd on other grounds*, 145 S. Ct.
480 (2025) ...........................................................................................13

*Spilker v. Hankin,*
188 F.2d 35 (D.C. Cir. 1951) ..............................................................35

*Stewart v. Nat'l Shopmen Pension Fund,*
730 F.2d 1552 (D.C. Cir. 1984)...........................................................35

*Tatneft v. Ukraine,*
771 F. App'x 9 (D.C. Cir. 2019).........................................52, 53, 54, 55

*TermoRio S.A. E.S.P. v. Electranta S.P.,*
487 F.3d 928 (D.C. Cir. 2007).............................................................28

*\*TIG Ins. Co. v. Republic of Argentina,*
110 F.4th 221 (D.C. Cir. 2024).......................... 13, 21, 22, 30, 31, 36

*Turkiye Halk Bankasi A.S. v. United States,*
598 U.S. 264 (2023)......................................................................14, 23

*United States v. AT&T, Inc.,*
916 F.3d 1029 (D.C. Cir. 2019).....................................................13, 46

*United States v. Gypsum Co.,*
333 U.S. 364 (1948)......................................................................13, 46

*Verlinden B.V. v. Central Bank of Nigeria,*
461 U.S. 480 (1983)......................................................................25, 33

*\*Wye Oak Technology, Inc. v. Republic of Iraq,*
24 F.4th 686 (D.C. Cir. 2022)......................................................26, 51, 52

ix

**Statutes and Rules**

28 U.S.C. § 1291 ...........................................................................1

*28 U.S.C. § 1604 ............................................................11, 13, 14

28 U.S.C. § 1605 ...............................................2, 14, 31, 34, 45, 51

28 U.S.C. § 1608 ...........................................................9, 10, 11

28 U.S.C. § 1927 ...........................................................................10

Fed. R. Civ. Proc. 12(b)(1) ......................................................10

Fed. R. Civ. Proc. 12(b)(2) ......................................................10

**Treatises and Periodical Materials**

Restatement (First) of Judgments § 68 .................................35

Restatement (Fourth) of the Foreign Relations Law of the United
  States § 487 ...........................................................................32

Restatement (Second) of Judgments § 28(5) .........................35

*Wright & Miller's Federal Practice & Procedure* § 4417 (2d ed.
  2002) ...................................................................................30

*Wright & Miller's Federal Practice & Procedure* § 4425 (4th ed.
  2024) ...................................................................................29

*Authorities upon which the Republic chiefly relies are marked with asterisks.

# GLOSSARY

| | |
|---|---|
| **District Court** | U.S. District Court for the District of Columbia |
| **FAA** | U.S. Arbitration Act, commonly referred to as the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* |
| **French Judgment** | Judgment of the Paris Court of Appeal, dated September 7, 2021 |
| **FSIA** | U.S. Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, *et seq.* |
| **Global Voice Br.** | Opening Brief of Appellant Global Voice Group SA, dated June 17, 2025 |
| **ICC** | International Chamber of Commerce |
| **J.A.** | Joint Appendix |
| **New York Convention** | Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 |
| **PTRA** | Postal Telecommunications and Regulatory Authority of Guinea |

# JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. The District Court issued its final Order (*see* J.A.__[ECF.No.43]), accompanied by its Memorandum Opinion (*see* J.A.__[ECF.No.44]), on February 18, 2025. Global Voice filed a Notice of Appeal on March 12, 2025 (after 27 days) (*see* J.A__[ECF.No.46]).

Global Voice mistakenly contends that the Court has subject matter jurisdiction pursuant to two exceptions to sovereign immunity in the Foreign Sovereign Immunities Act ("FSIA") (28 U.S.C. §§ 1602, *et seq*.)—the arbitration and waiver exceptions. 28 U.S.C. §§ 1605(a)(1), (6). The District Court disagreed, dismissing the case for lack of subject matter jurisdiction.

## STATEMENT OF THE ISSUES

1. Whether the District Court clearly erred when it found that Global Voice failed to meet its burden of production to establish the existence of an arbitration agreement between it and the Republic. J.A.__[ECF.No.44.at.24-26];

2. Whether the District Court correctly found that it lacked jurisdiction to confirm the arbitration award pursuant to the arbitration exception to the FSIA, 28 U.S.C. § 1605(a)(6). J.A.__[ECF.No.44.at.27-28];

3. Whether the District Court correctly found that it lacked jurisdiction to confirm the arbitration award pursuant to the implied waiver exception to the FSIA, 28 U.S.C. § 1605(a)(1). J.A.__[ECF.No.44.at.28-31].

## STATUTES AND REGULATIONS

Other than the items contained in the Addendum filed alongside this brief, all applicable statutes, etc. are contained in the Opening Brief of Appellant Global Voice Group SA.

# STATEMENT OF THE CASE

Appellant Global Voice Group SA ("Global Voice") brought this action to confirm an arbitration award issued by an International Chamber of Commerce tribunal seated in Paris, France, and to enforce a related judgment from the Paris Court of Appeal against Appellee the Republic of Guinea (the "Republic"). *See* J.A.__[ECF.No.1.at.9-12].

## A. The Partnership Agreement

On May 22, 2009, Global Voice, a company incorporated in the Seychelles, entered into the Partnership Agreement with the Postal and Telecommunications Regulatory Authority of Guinea ("PTRA"), a public legal entity established under Guinean law under the supervision of the Minister of Posts, Telecommunications and Digital Economy. *See* J.A.__[ECF.No.4-6]; *see also* J.A.__[ECF.No.4-1.at.7, ¶ 2].

The Partnership Agreement, translated from the original French into English, refers to the PTRA, "located in Conakry, Guinea, represented by its Director General, Mr. Nfa Ousmane Camara," as "one of the parties" and Global Voice, "represented by its Chief Executive Officer Mr. Laurent Lamothe," as "the other party." J.A.__[ECF.No.4-6.at.2]. The Partnership Agreement defines each of Global Voice and the PTRA individually as a "Party," and both Global Voice and the PTRA together as "the Parties." J.A.__[ECF.No.4-6.at.2].

Article 17 of the Partnership Agreement provides for binding arbitration of disputes between the "Parties" to the Partnership Agreement and a choice-of-law provision that the entire Partnership Agreement "is subject to the laws of the Republic of Guinea." J.A.__[ECF.No.4-6.at.11]. Article 17 states:

> In the absence of an amicable agreement between ***the Parties*** within a period of six (6) months following the date on which a dispute arises, any dispute of any kind, including the Annexes and any amendments thereto, which may arise between them, shall be subject to the exclusive jurisdiction of the Arbitration Rules of the International Chamber of Commerce in Paris by one or more arbitrators appointed in accordance with these Rules.

J.A.__[ECF.No.4-6.at.11] (emphasis added).

The signatures of three individuals appear on the Partnership Agreement: (1) Mr. Patrick Sinclair, a Project Director at Global Voice, on behalf of Global Voice, (2) Mr. Nfa Ousmane Camara, on behalf of the PTRA, and (3) Col. Mathurin Bangoura of the Guinean Ministry of Telecommunications and New Information Technologies. *See* J.A.__[ECF.No.4-6.at.11, 22]. Guinean law tasks the Ministry of Telecommunications and New Information Technologies with oversight of the PTRA. *See* J.A.__[ECF.No.4-1.at.¶7].

## B. Modifications to the Partnership Agreement

A month after the signing of the Partnership Agreement, Global Voice and the PTRA executed the First Amendment to the Partnership Agreement (the "First Amendment"). *See* J.A.__[ECF.No.4-7.at.2]. Like the Partnership Agreement, the

First Amendment defines each of Global Voice and the PTRA as a "Party" and both Global Voice and the PTRA together as "the Parties." *Id*. The signatures of three individuals appear on the First Amendment: (1) Mr. Laurent Lamothe, Chief Executive Officer at Global Voice, on behalf of Global Voice, (2) Mr. Nfa Ousmane Camara, on behalf of the PTRA, and (3) Col. Mathurin Bangoura of the Guinean Ministry of Telecommunications and New Information Technologies. *See* J.A.__[ECF.No.4-7.at.4, 12].

In 2012, three years after the Parties entered into the Partnership Agreement, the PTRA and Global Voice executed an Addendum to the Partnership Agreement (the "Addendum"). *See* J.A.__[ECF.No.4-8]. Once again, the Addendum referred to the PTRA and Global Voice as "the parties." J.A.__[ECF.No.4-8.at.2]. However, the only signatures to appear on the Addendum are those of: (1): Katim Touray, a Managing Director at Global Voice, on behalf of Global Voice, and (2) Diaby Moustapha Mamy, on behalf of the PTRA. *See* J.A.__[ECF.No.4-8.at.4, 8]. No representative from the Guinean Ministry of Telecommunications and New Information Technologies signed the Addendum.

## C.    The Arbitration

On December 8, 2016, Global Voice invoked Article 17 of the Partnership Agreement and filed a Request for Arbitration with the International Chamber of Commerce ("ICC") not only against the PTRA, but also against the Republic, a

nonparty to the Partnership Agreement. *See* J.A.__[ECF.No.1.at.¶3]; J.A.__[ECF.No.4-1.at.¶49].

On July 6, 2017, the PTRA notified the ICC Secretariat that it had engaged counsel to represent it in the arbitration. *See* J.A.__[ECF.No.4-1.at.¶58]. The PTRA requested thirty days to respond to the Request for Arbitration and to select a co-arbitrator. *See* J.A.__[ECF.No.4-1.at.¶58]. However, that same day, the ICC constituted an Arbitral Tribunal (the "Tribunal") without input from the PTRA. *See* J.A.__[ECF.No.4-1.at.¶54].

The Tribunal held a procedural conference with counsel for Global Voice and counsel for the PTRA on September 4, 2017. *See* J.A.__[ECF.No.4-1.at.¶71]. On September 19, 2017, the Republic authorized the same counsel to represent it in the arbitration for purposes of objecting to the Tribunal's jurisdiction over it. *See* J.A.__[ECF.No.4-1.at.¶74]. Global Voice, the PTRA, and the Republic signed Terms of Reference on October 16, 2017. *See* J.A.__[ECF.No.4-1.at.¶80].

The Terms of Reference included the Republic's jurisdictional objections, observing that the Republic "reiterate[d] the reservations expressed in previous communications," "renew[ed] their reservations on the appropriate nature of the constitution of the Arbitral Tribunal," and "reserve[d] the right to assert these reservations against any awards to come." *See* J.A. __[ECF.No.30-4.at.23-24, ¶¶103, 108]. The Terms of Reference memorialized the Republic's position that it

"was never a party to the Partnership Agreement" and "did not participate in the performance" of the Partnership Agreement and that, as a result, the Tribunal "must recognize itself as lacking jurisdiction with regard to the Republic[.]" J.A.__[ECF.No.30-4.at.26-27, ¶¶114-16].[1]

The Republic consistently and repeatedly objected to the Tribunal's jurisdiction over it. *See* J.A.__[ECF.No.4-1.at.17, ¶¶82, 84]. Throughout the arbitration, the Republic asserted that the Tribunal did not have jurisdiction over the Republic, because it was not a "Party" to the Partnership Agreement and never agreed to arbitration with Global Voice. *See* J.A.__[ECF.No.4-1.at.20, ¶¶96(b)-(c)]. At a hearing from January 28 through January 30, 2019, the Republic pressed this objection and argued that it "did not consent to being a party to" the Partnership Agreement and that its "mere signature" as "supervisory authority" did not suffice to "make it a party to the [Partnership] Agreement in the absence of a

---

[1] The Republic objects to Global Voice's misleading partial citation of the Terms of Reference in its Opening Brief, arguing that: "Guinea and the PTRA stated, in their section of the Terms of Reference, that the Tribunal 'must' decide this jurisdictional objection." *See* Global Voice Br. at 10. The passage in full from the Terms of Reference is: "If in the extraordinary event that the Arbitral Tribunal does not declare itself lacking jurisdiction with regard to all of the parties and all of the claims, it ***must recognize itself as lacking jurisdiction*** with regard to the Republic of Guinea." J.A.__[ECF.No.30-4.at.26, ¶114] (emphasis added). At no point did the Republic consent to the Tribunal's jurisdiction over it.

clear, express and unequivocal manifestation of its will to adhere to it.". *See* J.A.__[ECF.No.4-1.at.26, ¶¶125-26].

On July 18, 2019, the Tribunal issued its award (the "Award"). *See* J.A.__[ECF.No.4-2.at.36-37, ¶ 380]. Despite Article 17 of the Partnership Agreement having provided for Guinean law to govern the contract, the Tribunal decided to replace Guinean law with French law. The Tribunal then applied French law to hold that the Republic had, by its conduct, become a party to the Partnership Agreement. *See* J.A.__[ECF.No.4-1.at.28-29, ¶145]. According to the Tribunal, French law required "an examination of [the Republic's] behavior during contractual relations." J.A.__[ECF.No.4-1.at.28-29, ¶145]. After performing that examination, the Tribunal concluded that the Republic "considered itself . . . bound by [the Partnership Agreement's] terms and by the Arbitration Agreement it contains," and should be treated as a party to the Partnership Agreement, in spite of its plain text. J.A.__[ECF.No.4-1.at.30, ¶152].

D.    **The French Proceedings**

The Republic sought to have the Award annulled in the Paris Court of Appeal on the basis that the Republic "did not consent to be a party to the Partnership Agreement." J.A.__[ECF.No.4-5.at.¶37]. On September 7, 2021, the Paris Court of Appeal replaced Guinean law with French law to affirm the Tribunal's jurisdiction over the Republic: "Thus, the designation of Guinean law as

generally governing the Agreement is insufficient, on its own, to establish the parties' common desire to submit the arbitration clause to Guinean law[.]" J.A.__[ECF.No.4-5.at.¶33] (the "French Judgment"). This conclusion ignored the plain text of the Partnership Agreement, which defined the term "Parties" and excluded the Republic from that definition. It also ignored the plain text of Article 17, which provided that Guinean law would govern the Partnership Agreement. *See* J.A.__[ECF.No..4-5.at.¶¶40-52].

On June 19, 2024, the French Court of Cassation upheld the Award and the French Judgment. *See* J.A.__[ECF.No.42-1.at.6].

### E.    The U.S. Proceedings

On July 18, 2022, exactly three years after the Tribunal rendered the Award, Global Voice filed a complaint in the U.S. District Court for the District of Columbia seeking to confirm the Award against the Republic and to enforce the French Judgment. *See* J.A.__[ECF.No.1] (the "Complaint"). The Complaint did not seek confirmation of the Award against the PTRA. On October 14, 2022, Global Voice requested that the Clerk of the Court mail service packets to five Guinean ministers pursuant to 28 U.S.C. § 1608(a)(3). *See* ECF Nos. 8, 8-1.

On November 8, 2022, Global Voice filed a return of service indicating that service by mail had been effectuated on October 21, 2022 "pursuant [sic] 28 U.S.C. § 1608(a)(3)." ECF No. 12. On December 21, 2022, Global Voice moved

for entry of default. *See* ECF No. 13. Eight days later, the Clerk of the Court entered default against the Republic. *See* ECF No. 14.

On January 13, 2023, the Republic appeared specially to assert its sovereign immunity from suit and moved to set aside the default and dismiss the Complaint under Fed. R. Civ. Proc. 12(b)(1) for lack of subject matter jurisdiction on the basis of sovereign immunity and under Fed. R. Civ. Proc. 12(b)(2) for a lack of personal jurisdiction on the basis that Global Voice had failed to strictly comply with the FSIA's service provisions of 28 U.S.C. § 1608(a) (the "Motion to Dismiss"). *See* ECF Nos. 16, 16-1. Global Voice opposed. *See* ECF No. 17. Following the Republic's reply, Global Voice moved for leave to file a sur-reply, which Global Voice attached to its motion as an exhibit thus putting it before the District Court. *See* ECF Nos. 20, 20-1. The Republic opposed Global Voice's motion. *See* ECF No. 23.

Four months later, on June 21, 2023, before the District Court had decided the Republic's Motion to Dismiss, Global Voice moved for default judgment or, in the alternative, summary judgment. *See* ECF Nos. 25, 25-2. The Republic opposed Global Voice's motion and moved both to stay the proceedings and for sanctions under 28 U.S.C. § 1927, citing Global Voice's latest motions as duplicative and vexatious. *See* ECF Nos. 26-28. More briefing ensued. *See* ECF Nos. 29-33, 35, 37, 39.

On February 18, 2025, the Court issued its Order (*see* J.A.__[ECF.No.43]) and Memorandum Opinion (*see* J.A.__[ECF.No.44]) ruling on all of the motions pending before it, and granting the Republic's Motion to Dismiss for lack of subject matter jurisdiction.[2] As relevant to this appeal, the Court determined that the Republic ***was not*** a party either to the Partnership Agreement as a whole, or to the arbitration agreement in Article 17 of that agreement, or to any other agreement to arbitrate with Global Voice. *See* J.A.__[ECF.No.44.at.2]. Because Global Voice's assertion of subject matter jurisdiction had rested on an alleged agreement to arbitrate between it and the Republic, either explicit or implicit, the Court held that the Republic retained the immunity from suit provided by the FSIA (28 U.S.C. § 1604), and dismissed the case.

---

[2] The Court's Order: (1) granted the Republic's motion to set aside default, (2) granted the Republic's motion to dismiss, (3) granted Global Voice's motion for leave to file a sur-reply, (4) denied as moot Global Voice's motion for default judgment or for summary judgment, and (5) denied the Republic's motion for sanctions. J.A.__[ECF.No.43]. Global Voice's challenge here appears limited to the Court's granting of the Republic's motion to dismiss, and denial of Global Voice's motion for default judgment or for summary judgment. The Court did not reach the Republic's alternative argument that the Court lacked personal jurisdiction because Global Voice failed to comply with the FSIA's service provisions in 28 U.S.C. § 1608. *See* J.A.__[ECF.No.44.at.6 n.3].

## SUMMARY OF ARGUMENT

The District Court lacked subject matter jurisdiction over this action, because Global Voice's Complaint (and its seven legal briefs that followed) failed to meet its burden of producing an applicable arbitration agreement, and "at best, failed to overcome [the Republic]'s contrary evidence (the text of the Partnership Agreement) that establishes by a preponderance that [the Republic] was not a party to the Arbitration Agreement." J.A.__[ECF.No.44.at.26]. The District Court considered all of the evidence and correctly held that Global Voice failed to

"***explain how [the Republic]'s involvement in or benefit from the Partnership Agreement bears on whether [the Republic] agreed to arbitration under the contract***—particularly when the Arbitration Agreement applies by its text only to the Partnership Agreements' 'Parties' (defined as [Global Voice] and the PTRA)." J.A.__[ECF.No.44.at.26] (citing J.A.__[ECF.No.4-6.at.2, 11]) (emphasis added). As a result, the District Court concluded that the Republic "was not a party to the arbitration agreement invoked by [Global Voice] to hale [the Republic] into a U.S. court." J.A.__[ECF.No.44.at.2]. That conclusion is not clearly erroneous, but in fact correct, and nothing in Global Voice's submissions give this Court reason to disturb that conclusion.

Accordingly, neither the FSIA's arbitration exception nor the FSIA's waiver exception provide subject matter jurisdiction here because the Republic never

"made" an agreement to arbitrate, and the Republic never agreed to waive its sovereign immunity from suit. This Court should not stomach any further effort by Global Voice to challenge the Republic's sovereign immunity, and should instead uphold the judgment of the District Court.

## STANDARD OF REVIEW

The Court reviews a district court's jurisdictional rulings on questions of law *de novo*. *See TIG Ins. Co. v. Republic of Argentina*, 110 F.4th 221, 230 (D.C. Cir. 2024) (citing *Simon v. Republic of Hungary*, 77 F.4th 1077, 1094 (D.C. Cir. 2023), *rev'd on other grounds*, 145 S. Ct. 480 (2025)).

The Court reviews a district court's factual determinations for clear error. *See Schubarth v. BVVG Bodenverwertungs-und-Verwaltungs GmbH*, 140 F.4th 500, 503 (D.C. Cir. 2025) (citing *Simon*, 77 F.4th at 1094). The clear error standard requires that this Court be "left with the definite and firm conviction that a mistake has been committed" in order to reverse a factual finding made by a district court. *United States v. AT&T, Inc.*, 916 F.3d 1029, 1033 (D.C. Cir. 2019) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## ARGUMENT

### I.    The District Court Correctly Declined To Exercise Subject Matter Jurisdiction Under The FSIA's Arbitration Exception.

The Republic is a foreign sovereign and thus presumptively immune from suit before courts in the United States. *See* 28 U.S.C. § 1604. The Foreign

Sovereign Immunities Act (the "FSIA") provides the "sole basis for obtaining jurisdiction over a foreign state" in United States courts. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). The Courts have an "independent obligation to ensure that they do not exceed the scope of their jurisdiction[,]" *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011), particularly in cases involving the FSIA, which "codifies a baseline principle of immunity for foreign states." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 272 (2023) (citing 28 U.S.C. § 1604).

Prior to exercising subject matter jurisdiction under the arbitration exception to the FSIA, 28 U.S.C. § 1605(a)(6), a court must make three threshold factual findings, namely that there exists: "(1) an arbitration agreement [with the foreign sovereign], (2) an arbitration award [against it], and (3) a treaty potentially governing award enforcement." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024) (citing *Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015)). Each of these factual findings are essential to establishing subject matter jurisdiction under the arbitration exception.

As an initial matter, this Court's decision in *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, No. 24-7030, —F.4th—, 2025 WL 1934050 (D.C. Cir. July 15, 2025), forecloses Global Voice's position that the FSIA's arbitration exception can apply to its foreign judgment recognition claim in this case. In

*Amaplat*, this Court held that under the "plain terms" of the arbitration exception's statutory text, which does not "mention foreign court judgments," the arbitration exception cannot apply to "an action to recognize and enforce a foreign court judgment." *Amaplat*, 2025 WL 1934050, at *4.

That leaves only Global Voice's foreign arbitral award recognition claim, and the District Court correctly held that Global Voice failed to meet its burden of production with respect to the FSIA's arbitration exception. *See* J.A.__[ECF.No.44.at.26]. Because Global Voice failed to establish *prima facie* evidence of the existence of an arbitration agreement with the Republic, the District Court concluded that the Republic enjoyed the presumption of sovereign immunity from suit and that the District Court lacked subject matter jurisdiction.

## A. The District Court Correctly Applied The Burden-Shifting Evidentiary Framework.

Under this Court's jurisprudence, whether a foreign state has agreed to arbitration is the first of the three "jurisdictional fact[s]" that "the District Court must resolve in order to maintain jurisdiction" under the arbitration exception to the FSIA. *Chevron*, 795 F.3d at 204. In making this threshold factual finding, courts apply a "burden-shifting framework." *NextEra*, 112 F.4th at 1100. Initially, a plaintiff must satisfy the burden of production as to the existence of an arbitration agreement by "present[ing] prima facie evidence of an agreement [to arbitrate]." *Chevron*, 795 F.3d at 205 n.3. The burden then shifts to the sovereign to overcome

that evidence, which it may do by "establish[ing] the absence of the factual basis by a preponderance of the evidence." *NextEra*, 112 F.4th at 1100 (quoting *Chevron*, 795 F.3d at 204).

Attempting to meet its burden of production, Global Voice presented the District Court with two pieces of evidence. First, Global Voice presented the signature of Col. Mathurin Bangoura of the Guinean Ministry of Telecommunications and New Information Technologies on the Partnership Agreement. *See* J.A.__[ECF.No.4-6.at.11, 22]; *see also* ECF No. 17 at 22; ECF No. 20-1 at 3. Second, Global Voice presented the Tribunal's Award and the French Judgment affirming the Award's jurisdictional decision. *See* J.A.__[ECF.No.4-1.at.¶¶145–53]; J.A.__[ECF.No.4-5.at.¶¶ 41–54]; *see also* ECF No. 17 at 24; ECF No. 25-2 at 25. The District Court considered this evidence and correctly concluded that Global Voice had failed to meet its burden for establishing federal subject matter jurisdiction. *See* J.A.__[ECF.No.44.at.24-26].

1.    <u>The Republic Was Not A Party To The Partnership Agreement Or Any Arbitration Agreement With Global Voice.</u>

Specifically, the District Court held that the evidence presented by Global Voice "failed to meet its burden of production that [the Republic] agreed to the Arbitration Agreement or, at best, failed to overcome [the Republic]'s contrary evidence (the text of the Partnership Agreement) that establishes by a preponderance that [the Republic] was not a party to the Arbitration Agreement."

J.A.__[ECF.No.44.at.26]. With respect to the signature of Col. Mathurin Bangoura, the District Court observed that Global Voice "provides no explanation as to why the Guinean minister's signature would render [the Republic] a party to the Partnership Agreement when it is not listed as a 'Party'" to that agreement. J.A.__[ECF.No.44.at.24]. Instead, the Court gave credence to evidence showing the minister's signature represented "routine sign-off associated with the minister's oversight responsibility" of the PTRA required by Guinean law. J.A.__[ECF.No.44.at.24-25]; *see also* J.A.__[ECF.No.4-1.at.¶7].

Global Voice criticizes the District Court for having "speculated" to reach this conclusion (*see* Global Voice Br. at 44), but Global Voice ignores the fact that the District Court's interpretation of the evidence is consistent with the plain text of the Partnership Agreement and its definition of "Parties." If the Minister's signature reflected the Republic's intent to become a party to the Partnership Agreement, then the definition of "Parties" in the Partnership Agreement would not have excluded the Republic.

Global Voice cannot cite to a single case in which the signature of a foreign government agency official on a contract alone was sufficient to establish the existence of an arbitration agreement with that sovereign, contrary to the plain text of that agreement. This Court should decline Global Voice's invitation to create new law expanding the scope of the FSIA's arbitration exception to include

sovereign third-party beneficiaries to contracts. *See Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 50 (2d Cir. 2021) ("[T]he Republic [of Moldova] was not a party to the underlying arbitration agreement . . . It is not clear to us, however, that a theory of direct benefits estoppel can establish that a foreign state 'made' an agreement to which it was not a party.").

While Global Voice complains that it has been "faulted for failing to rebut a finding the Tribunal never made" (*see* Global Voice Br. at 45),[3] the District Court's weighing of the evidence reflects a faithful application of the burden-shifting framework outlined in *Chevron* and adopted by *NextEra*. The Partnership Agreement alone, and the fact that Col. Mathurin Bangoura's signature appeared on it, do not override the fact that the Republic was not a party to the Partnership Agreement and that Article 17 provided only for arbitration of disputes between its "Parties," not for arbitration with the Republic. J.A.__[ECF.No.4-6.at.2, 11].

---

[3] Global Voice cannot credibly argue that the District Court failed to give it an opportunity to present evidence. Global Voice made no less than seven substantive filings together with four declarations. *See* ECF Nos. 1, 4, 17, 17-2, 20-1, 25-2, 25-3, 25-4, 28, 30, 30-2, 31, 32, 33. The District Court also heard oral argument. *See* ECF No. 40. The District Court considered Global Voice's evidence and correctly found it to be insufficient.

### 2. Decisions By Foreign Tribunals Do Not Satisfy Global Voice's Burden Of Production.

Global Voice next relies on the legal conclusion of both the Tribunal and of the Paris Court of Appeal that, as a matter of French law, the Republic became a party to the Partnership Agreement, including the arbitration agreement in Article 17. *See* J.A.__[ECF.No.4-1.at.¶¶145–53]; J.A.__[ECF.No.4-5.at.¶¶41–54]; *see also* ECF No. 17 at 24; ECF No. 25-2 at 32. These foreign tribunals' decisions cannot meet Global Voice's *prima facie* burden of producing an arbitration agreement between it and the Republic for three reasons.

First, District Courts cannot delegate any part of their determination of their own subject matter jurisdiction to foreign tribunals such as the French courts and the Tribunal. *See* Part I.B below.

Second, even if federal courts were entitled to rely on these foreign tribunals' factual findings and legal conclusions to establish federal subject matter jurisdiction under the FSIA, their flawed reasoning would justify the District Court's conclusion to dismiss for lack of subject matter jurisdiction. As the District Court noted, the Tribunal rested its decision that it had jurisdiction over the Republic "on general principles of French contract law." J.A.__[ECF.No.44.at.26] (citing J.A.__[ECF.No.4-1.at.¶125]; J.A.__[ECF.No.4-5.at.¶40]). As explained below, both the Tribunal and the Paris Court of Appeal refused to apply the choice-of-law provision in Article 17 providing for the application of Guinean law, in

favor of applying French law. *See* J.A.__[ECF.No.4-5.at.¶¶31-33]. This Court is not bound to follow—as Global Voice argued below—the Tribunal's or the French courts' colonialist reasoning that replaced Global Voice's and the PTRA's choice of Guinean law with those bodies' preference for French law.[4]

Even if the Republic's conduct would make it party to the Partnership Agreement if that agreement had been governed by French law, there was no evidence in the record that the Republic ever agreed to the application of French law. As the District Court correctly held:

> [Global Voice] points to those tribunals' decisions as if they speak for themselves. Yet, notably, both decisions appeared to rest their findings of [the Republic]'s consent on general principles of French contract law. *See* ECF 4-1 ¶ 125; ECF 4-5 ¶ 40. ***[Global Voice] provides no authority establishing that those principles of French contract law govern this Court's analysis under the FSIA***.

J.A.___[ECF.No.44.at.26] (emphasis added).

_____

[4] Global Voice never pled before the District Court that the Republic was a third-party beneficiary to the Partnership Agreement or otherwise estopped from disputing that it was party to the Partnership Agreement under French law or any other body of law. Instead, Global Voice argued that the District Court was compelled to follow the Tribunal's Award and the French Judgment rather than exercise its own judgment. *See* ECF No. 17 at 23-24; ECF No. 20-1 at 2-3, 5; ECF No. 25-2 at 32.

Third, the District Court explicitly considered the Award and the French

Judgment and did not disregard them as Global Voice contends (*see* Global Voice

Br. at 22):

> [T]o the extent the Court may take judicial notice of those tribunals' findings and accept them for their truth, ***[Global Voice] does not explain how [the Republic]'s involvement in or benefit from the Partnership Agreement bears on whether [the Repubic] agreed to arbitration under the contract***—particularly when the Arbitration Agreement applies by its text only to the Partnership Agreements' "Parties" (defined as [Global Voice] and the PTRA).

J.A.___[ECF.No.44.at.26] (emphasis added). Global Voice argued that the District

Court should defer blindly to the decisions of the Tribunal and the Paris Court of

Appeal. The District Court properly refused to do so. Under the FSIA, the

Republic remained presumptively immune from suit in the absence of *prima facie*

evidence of the existence of an arbitration agreement with the Republic. *See*

*Chevron*, 795 F.3d at 205.

Global Voice relies on *TIG Insurance Co. v. Republic of Argentina*, 110

F.4th 221 (D.C. Cir. 2024). The District Court's reasoning shows that it made the

requisite choice-of-law analysis required under that case, *id*. at 235, when it

observed that "[Global Voice] provides no authority establishing that those

principles of French contract law govern this Court's analysis under the FSIA."

J.A.___[ECF.No.44.at.26]. It was not that the District Court erred. It was that

Global Voice made no effort to explain why French law should govern the District Court's analysis of the Partnership Agreement.

Global Voice further argues that this Court does not need to deal with the choice-of-law question as required by *TIG*, either because the question was precluded, or because the result would be the same under French, Guinean, and U.S. law (the "no true conflict" argument). *See* Global Voice Br. at 28. As explained in Part I.D below, issue preclusion is not available to resolve the choice-of-law question. As to the "no true conflict" argument, Global Voice never made this argument to the District Court. Even if it were correct, which it was not, the District Court could not have committed error by failing to consider an argument that was never made to it. Global Voice cannot now raise that argument for the first time on appeal. *See Earle v. Dist. of Columbia*, 707 F.3d 299, 308 (D.C. Cir. 2012) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.").

Global Voice hinged its argument entirely upon the District Court's alleged obligation to defer to the findings of fact and legal conclusions made by the Tribunal and the Paris Court of Appeal. *See e.g.* J.A.___[ECF.No.1.at.7.¶¶.27, 33]; ECF No. 17 at 27-28; ECF No. 20-1 at 5; ECF No. 25-2 at 30-37, 39-42; ECF No. 29 at 9-12. Global Voice never argued that the Republic would be bound by the arbitration agreement under Guinean law until its Opening Brief before this Court.

In response, the District Court observed that Global Voice "points to those tribunals' decisions as if they speak for themselves . . . [but] provides no authority establishing that those principles of French contract law govern this Court's analysis under the FSIA." J.A.___[ECF.No.44.at.26]. It was Global Voice's legal submissions to the District Court that were deficient, not the District Court's analysis of those submissions. This Court should reject Global Voice's misuse of these appellate proceedings to rectify its failure to establish a *prima facie* case for the existence of an arbitration agreement between Global Voice and the Republic. That the Republic continues to have to litigate this case violates the "baseline principle of immunity for foreign states" codified in the FSIA. *Turkiye Halk Bankasi*, 598 U.S. at 272.

> 3.    The Republic's Contrary Evidence Overcame Global Voice's Evidence.

Even if Global Voice had carried its burden of producing evidence that established a *prima facie* existence of an arbitration agreement, the Republic adequately rebutted that showing. In the words of the District Court: "[I]n light of the record before it, the Court agrees . . . that the sovereign was not a party to the arbitration agreement invoked by [Global Voice] to hale [the Republic] into a U.S. court." J.A.__[ECF.No.44.at.2]. The District Court's conclusion is not clearly erroneous, but rather consistent with the plain text of the Partnership Agreement. J.A.__[ECF.No.44.at.24]; J.A.__[ECF.No.4-6.at.2, 11].

This is a correct application of the burden-shifting framework outlined in *Chevron* and *NextEra*: the plain text of the Partnership Agreement conclusively "establish[es] the absence of the factual basis" that the Republic agreed to arbitration with Global Voice "by a preponderance of the evidence." *NextEra*, 112 F.4th at 1100 (quoting *Chevron*, 795 F.3d at 204).

Faced only with Global Voice's command that it defer to the reasoning of the Tribunal and the Paris Court of Appeal, the District Court was left with no other possibility than to conclude that Global Voice "has either failed to meet its burden of production that [the Republic] agreed to the Arbitration Agreement or, at best, failed to overcome [the Republic]'s contrary evidence (the text of the Partnership Agreement) that establishes by a preponderance that [the Republic] was not a party to the Arbitration Agreement." J.A.__[ECF.No.44.at.26]. As a result, Global Voice failed to meet its burden of production, and therefore failed to establish the applicability of the arbitration exception to sovereign immunity under the FSIA. Accordingly, the District Court correctly concluded that it lacked subject matter jurisdiction under that exception.

## B. The Power To Determine Whether The FSIA Provides Subject Matter Jurisdiction Belongs Solely To United States Courts.

Global Voice asserts that the District Court erred as a matter of law by conducting an independent inquiry into its subject matter jurisdiction under the FSIA, and instead, was obligated to constrain its subject matter jurisdiction

determination to accord with the conclusions of either the Paris Court of Appeal or the Tribunal. *See* Global Voice Br. at 22-43. While these arguments each independently fail based on their misplaced reliance on the theories of issue preclusion and delegation (*see* Parts I.D and I.E below), they also fail *ab initio* for a common reason: The District Court faithfully conducted a *de novo* determination of its subject matter jurisdiction under the FSIA in accordance with its "independent obligation to ensure that [it did] not exceed the scope of [its] jurisdiction.'" J.A.__[ECF.44.at.18] (quoting *Henderson*, 562 U.S. at 434).

The FSIA provides "the *sole* basis for obtaining jurisdiction over a foreign state," in United States courts. *Amerada Hess*, 488 U.S. at 434 (emphasis added). The FSIA mandates that "[a]t the threshold of every action in a District Court against a foreign state . . . the court must satisfy itself that one of the [FSIA] exceptions applies[.]" *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493-94 (1983). In conducting this threshold jurisdictional determination, the District Court "must apply the detailed federal law standards set forth in the [FSIA]." *Id*. at 494.

The power to interpret and apply those FSIA standards belongs solely to United States courts, because "[i]t is well established that 'interpreting statutes granting jurisdiction to Article III courts is *exclusively* the province of the courts.'" *Murphy Expl. & Prod. Co. v. U.S. Dep't of the Interior*, 252 F.3d 473, 478 (D.C.

Cir. 2001) (quoting *Ramey v. Bowsher*, 9 F.3d 133, 136 n.7 (D.C. Cir. 1993))

(cleaned up; emphasis added). In other words, the power to interpret the FSIA

belongs only to United States courts—not to the Tribunal or the French courts.

In *Wye Oak Technology, Inc. v. Republic of Iraq*, 24 F.4th 686 (D.C. Cir.

2022), this Court rejected arguments similar to those made by Global Voice in this

case. The petitioner in *Wye Oak* brought suit against the foreign state of Iraq and

attempted to invoke the law of the case doctrine to constrain the Court's evaluation

of its subject matter jurisdiction under the FSIA. *Id*. at 697. This Court rejected that

argument, stating that such constraint of a court's "assessment of its own

jurisdiction based on an earlier determination of that question is inherently

incompatible with the established ongoing duty of a court to determine its own

jurisdiction at every stage of the legal proceedings." *Id*. at 699. This Court should

similarly reject Global Voice's attempts invoke the doctrines of issue preclusion

and delegation for the purpose of constraining the District Court's independent

obligation to assure itself of its subject matter jurisdiction.

### C. The Court's Subject Matter Jurisdiction Determination Under The FSIA Differs From Competency To Review An Award.

Global Voice argues that because French courts are the "competent

authority," or the "primary jurisdiction," to annul an award under the New York

Convention, French law should govern the assessment under the FSIA of whether

the Republic was bound by an arbitration agreement. *See* Global Voice Br. at 29-

34. This argument (made for the first time on appeal) conflates three distinct concepts: (a) the powers of the court at the seat of arbitration (*i.e.* "primary jurisdiction") to determine the legal existence of the arbitral award, (b) the power of the enforcing court (*i.e.* "secondary jurisdiction") to deny enforcement under the New York Convention, and (c) the limited subject matter jurisdiction of the United States federal courts and the presumption of sovereign immunity from suit codified by Congress in the FSIA.

Under the New York Convention, the courts of the primary jurisdiction have exclusive jurisdiction to annul an arbitral award ***under its own arbitral law***—the courts of the secondary jurisdiction cannot annul an award. *See, e.g., Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876, 883-84 (11th Cir. 2023). However, a U.S. court's acknowledgement that it lacks subject matter jurisdiction under the FSIA in an enforcement action against a foreign sovereign is not the setting aside of an award—a denial of enforcement based on lack of subject matter jurisdiction under the FSIA would not affect the legal existence of the award. The award could still be enforced in other jurisdictions. For instance, although the three-year statute of limitations for enforcing the Award against the PTRA in the United States expired on July 18, 2022, nothing about the District Court's immunity decision prevents Global Voice from enforcing the Award against the PTRA in other jurisdictions, such as Guinea or the Seychelles.

In the two cases cited by Global Voice on this point, the U.S. courts discuss deference to the courts of the primary jurisdiction in the context of a ***refusal*** to enforce. *See TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007) (dismissing enforcement action because court of primary jurisdiction annulled award); *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310 (2d Cir. 1998) (discussing the district court's power to stay an enforcement proceeding because of an annulment action on the ground of fraud pending in primary jurisdiction). Neither of the two cases involved a question of sovereign immunity under the FSIA and the presumption that sovereign states are immune from suit and that the federal courts lack subject matter jurisdiction over such disputes. Global Voice misuses these cases to argue that given "[t]his Court treats the primary jurisdiction's annulment decisions as conclusive . . . it would make no sense to hold that a primary jurisdiction's annulment decision is preclusive if it sets aside the award, but not if it confirms it." Global Voice Br. at 30-31. This is a red herring. An annulment decision rendered in a primary jurisdiction "has ***no bearing on the district court's jurisdiction*** and is instead an affirmative defense properly suited for consideration at the merits stage." *Proc. & Indus. Devs. Ltd. v. Federal Republic of Nigeria*, 27 F.4th 771, 772 (D.C. Cir. 2022) ("*P&ID II*") (emphasis added).

**D.     The French Judgment Cannot Have Issue Preclusive Effect.**

Global Voice contends that the District Court erred in not deferring to the

Paris Court of Appeal's finding as to whether there was an arbitration agreement

between Global Voice and the Republic under the doctrine of issue preclusion (or

collateral estoppel). *See* Global Voice Br. at 24. The District Court did not err in

refusing to defer to the Paris Court of Appeal in determining its own subject matter

jurisdiction.

> 1.     The French Judgment Cannot Have Issue Preclusive Effect
>          Because The Same Issue Was Not Litigated.

First, issue preclusion does not apply because the issue in this case—the

District Court's subject matter jurisdiction under the FSIA—is not the same issue

decided by the Paris Court of Appeal. For a prior judgment to have issue preclusive

effect, "the same issue now being raised must have been contested by the parties

and submitted for judicial determination in the prior case." *Martin v. Dep't of Just.*,

488 F.3d 446, 454 (D.C. Cir. 2007). "Identity of the issue is established by

showing that the same general legal rules govern both cases and that the facts of

both cases are indistinguishable as measured by those rules." *Aenergy, S.A. v.

Republic of Angola*, 123 F.4th 1351, 1356 (D.C. Cir. 2024) (quoting 13C *Wright &

Miller's Federal Practice & Procedure* § 4425 (4th ed. 2024)). Moreover,

"[i]ssues are not identical if the second action involves application of a different

legal standard, even though the factual setting of both suits may be the same."

*B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) (quoting 18C *Wright & Miller's Federal Practice & Procedure* § 4417 (2d ed. 2002)).

"The party invoking collateral estoppel bears the burden of establishing that its conditions have been satisfied." *Aenergy*, 123 F.4th at 1356. Global Voice contends that "the holding [of the French Judgment] involves the same issues as here." Global Voice Br. at 24. However, the Paris Court of Appeal assessed whether the Tribunal had properly declared itself competent under French arbitral law, while the District Court had to assess whether it had subject matter jurisdiction under the FSIA's arbitration exception. These are two different inquiries that use two different legal standards.

This Court in *TIG* held that, in order to decide whether it had subject matter jurisdiction under the FSIA's arbitration exception, a district court must determine the body of law applicable to the arbitration agreement and assess whether an arbitration agreement was enforceable against a foreign sovereign under that law. *See TIG*, 110 F.4th at 235. This inquiry does not allow for the default application of a general "common will of the parties" standard derived from forum law, because "nothing in the FSIA's arbitration exception . . . purports to alter *otherwise applicable* background principles concerning who is bound by arbitration agreements," and "the FSIA *provides no law* to guide to determination whether an enforceable arbitration agreement exists, that question must be

answered based on ***external sources of law***." *Id.* at 234-35 (emphases added)

(quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)).

The Paris Court of Appeal reviewed the Tribunal's determination of its own

competency under French law. On the other hand, under *TIG*, the District Court's

choice-of-law assessment required it to determine whether French arbitral law has

*any* application to the question of whether the arbitration agreement was

enforceable against the Republic.[5] As the inquiry under French law and that under

28 U.S.C. § 1605(a)(6) are not governed by "the same general legal rules," they

necessarily cannot concern the same issue. *Aenergy*, 123 F.4th at 1356. Therefore,

issue preclusion cannot apply.

2.    No Evidence Suggests The French Judgment Would Have Issue
      Preclusive Effect Under French Law.

Even if issue preclusion could apply in this case, it does not resolve the

District Court's subject matter jurisdiction determination. Instead, Global Voice

must still show that the French Judgment would have preclusive effect under

French law, because "[a] foreign judgment will not be given greater preclusive

effect in the United States than the judgment would be accorded in the state of

_____

[5] The District Court conducted this choice-of-law analysis and found Global Voice
    had not established that French law applied to the Partnership Agreement, neither
    in whole nor in part. *See* J.A.___[ECF.No.44.at.26]; *see also* Part I.A.2 above.

origin." Restatement (Fourth) of the Foreign Relations Law of the United States § 487.

Global Voice presented no evidence that the findings included in the reasoning of the French Judgment would have preclusive effect in the French legal system. The Plaintiff has only submitted Article 480 of the French Civil Procedure Code (CPC) as evidence of preclusive effect of finalized court decisions ("*l'autorité de la chose jugée*") under French law. *See* ECF No. 17-2 at 3, § 10. That provision, however, appears to relate to the claim preclusive effect of the finalized judgment and not to the matter of issue preclusion. *See Films By Jove, Inc. v. Berov*, 250 F. Supp. 2d 156, 217 n.14 (E.D.N.Y. 2003) ("Though no expert testimony concerning French procedure has been presented to this court, it would appear that the French courts do not recognize the principle of collateral estoppel/issue preclusion.").

3. <u>Public Policy Weighs Against Deferring To Foreign Country Judgments In Jurisdictional Determinations.</u>

Foreign country judgments are not entitled to full faith and credit under the Constitution. U.S. courts may grant issue preclusive effect to a foreign judgment as a matter of comity. "[A]ffording comity to foreign judgments is not mandatory; rather, comity will be granted to the decision or judgment of a foreign court if . . . the laws and public policy of the forum state will not be violated." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 24 (D.D.C. 2011)

(quoting Second and Fourth Circuit precedent) (cleaned up). This Court in *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, explained that "a state is not required to give effect to foreign judicial proceedings grounded on policies which do violence to its own fundamental interests[.]" 731 F.2d 909, 931 (D.C. Cir. 1984).

A court's determination of subject matter jurisdiction under the FSIA implicates important federal foreign relations interests, including "giv[ing] foreign states and their instrumentalities some protection from the inconvenience of suit as a gesture of comity between the United States and other sovereigns," *Dole Food Co. v. Patrickson*, 538 U.S. 468, 487 (2003), ensuring "harmonious relations with foreign sovereigns," *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 242 (2007) (Breyer, J., dissenting), and "develop[ing] . . . a uniform body of federal law governing assertions of sovereign immunity," *Verlinden*, 461 U.S. at 484. Binding a U.S. court to the findings of a foreign court or arbitral tribunal in deciding a matter that implicates these interests would "do violence to [the United States'] own fundamental interests." *Laker Airways*, 731 F.2d at 931.

Global Voice cannot point to any binding precedent that suggests a U.S. court must or could rely on a ***foreign country judgment*** to establish, based on issue

preclusion, a "jurisdictional fact" under 28 U.S.C. § 1605(a)(6).[6] As explained in

Part I.B above, it is settled law that U.S. courts have the "independent obligation to

ensure" that they have subject matter jurisdiction over the dispute before allowing

litigation against foreign sovereigns to proceed. J.A.__[ECF.44.at.18] (quoting

*Henderson*, 562 U.S. at 434).

While both the doctrines of claim preclusion and issue preclusion serve the

public interest by "protecting litigants from the burden of relitigating an identical

issue with the same party or his privy and . . . promoting judicial economy by

preventing needless litigation," *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326

(1979), the foreign relations interests are weightier in comparison in many cases,

such as this one. As this Court observed, "*res judicata*, as the embodiment of a

public policy, must, at times, be weighed against competing interests, and must, on

---

[6] Counsel is aware of only one unpublished district court opinion from this Circuit
in which a court has assumed that issue preclusion ***might*** apply to a foreign
sovereign in the context of an FSIA analysis. However, the court never analyzed
or decided the issue presented in this case: whether federal courts are obligated
to give issue preclusive effect to a foreign country judgment when analyzing their
subject matter jurisdiction under the FSIA. *See Entes Indus. Plants, Constr. &
Erection Contracting Co. Inc. v. Kyrgyz Republic*, No. CV 18-2228 (RC), 2019
WL 5268900 (D.D.C. Oct. 17, 2019) (holding that a Canadian judgment—which
the court assumed, without deciding, should be recognized—did not preclude an
issue being litigated because the issue was not properly raised in the Canadian
proceedings).

occasion, yield to other policies." *Spilker v. Hankin*, 188 F.2d 35, 39 (D.C. Cir. 1951).[7]

> ### 4. Issue Preclusion Should Not Apply Because The Matter Calls For A New Determination Of The Issue.

Finally, issue preclusion does not apply where "[t]here is a clear and convincing need for a new determination of the issue. . . because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the original action[.]" *Stewart v. Nat'l Shopmen Pension Fund*, 730 F.2d 1552, 1557 n.10 (D.C. Cir. 1984) (quoting Restatement (Second) of Judgments § 28(5)).

The French Judgment applied principles of French contract law despite the express choice-of-law clause in the underlying contract that called for application of Guinean law. The Paris Court of Appeal found this express contractual language to be "insufficient" to govern the arbitration agreement under French arbitral law. *See* J.A.___[ECF.No.4-5.at.7.¶¶31-33]. As explained in Part I.D.1 above, this choice-of-law analysis assumes (without foundation) that a rule of French arbitral

---

[7] The *Spilker* court was discussing collateral estoppel/issue preclusion when it referred to *res judicata*. *See id*. at 37-38 (citing Restatement (First) of Judgments § 68).

law regarding choice-of-law applies to an arbitration agreement.[8] *TIG*, on the other hand, instructs the District Court to determine *de novo* "what source of law governs the question of enforcement of the arbitration provision" as part of the FSIA arbitration exception analysis. 110 F.4th at 235.

Further, given the foreign relations interests sought to be safeguarded by Congress in enacting FSIA, *see* Part I.D.3 above, the immunity of foreign sovereigns implicates an important public interest such that a new determination of these issues by the District Court was necessary here. Therefore, even if a French court's determinations on individual issues could, in principle, be granted preclusive effect even in the context of the FSIA, ***this*** French Judgment should not be given such effect.

---

[8] In a footnote, Global Voice cites *Balkan Energy Ltd. v. Republic of Ghana*, 302 F. Supp. 3d 144, 152 (D.D.C. 2018) for the proposition that the law of the chosen seat of arbitration prevails over the law chosen in a general choice-of-law clause in a contract. *See* Global Voice Br. at 29 n.4. This approach is not only incongruous with *TIG*, but the court in *Balkan Energy* did not actually engage in a choice-of-law determination using an applicable conflict-of-laws rule. *See Balkan Energy*, 302 F. Supp. 3d at 152-53. Moreover, Global Voice ignores that the Partnership Agreement's choice-of-law provision was contained in the same section of the Partnership Agreement (Article 17) as the agreement between Global Voice and PTRA to arbitrate any disputes.

### E. The Republic And Global Voice Could Not Have, And Did Not, Agree To Delegate The Question Of The Existence Of An Arbitration Agreement To The Tribunal.

Global Voice then argues in the alternative that "this Court can and should hold that the Arbitral Tribunal's ruling that Guinea is bound by the Arbitration Agreement conclusively establishes that Guinea 'made' the contract" based on the principles of delegation set forth by the Supreme Court in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) and its progeny. Global Voice Br. at 35.

The *First Options* framework is used to determine who has the power to decide "threshold arbitrability question[s]—that is, whether [an] arbitration agreement applies to the particular dispute." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). The default rule is that a "question of arbitrability . . . is undeniably an issue for judicial determination." *AT&T Techs., Inc. v. Comm'n Workers of Am.*, 475 U.S. 643, 649 (1986). The parties may change that default rule, as "the [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions[.]" *Henry Schein*, 586 U.S. at 65.

The Supreme Court's *First Options* decision sets forth a heavy burden for parties seeking to change the default rule of judicial review, stating that "when courts decide whether a party has agreed that arbitrators should decide

arbitrability[,] Courts should not assume that the parties agreed to arbitrate arbitrability unless there is '***clear and unmistakable***' evidence that they did so." *First Options*, 514 U.S. at 944 (quoting *AT&T Techs.*, 475 U.S. at 649) (cleaned up; emphasis added).

Global Voice's invocation of the *First Options* delegation principles fails for three separate reasons. First, Global Voice invokes these delegation principles, which derive from the FAA, and insists that they should control (and be dispositive of) the District Court's determination of its subject matter jurisdiction under the FSIA. The FSIA's subject matter jurisdiction inquiry is, however, wholly separate from the FAA's award confirmation inquiry. This Court has repeatedly rejected similar attempts to conflate these two distinct concepts. *See, e.g., LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 878 (D.C. Cir. 2021); *Chevron*, 795 F.3d at 205; *NextEra*, 112 F.4th at 1103-04.

Second, even assuming *arguendo* that these FAA delegation principles could inform the District Court's FSIA subject matter jurisdiction determination, Global Voice assumes (wrongly) that the FAA permits parties to delegate to an arbitrator the question of whether an agreement to arbitrate has been made in the first place. The Supreme Court, this Court, and all sister circuits agree, however, that courts are required to resolve that antecedent question in the first instance. *See, e.g., Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty*

*Mar. Corp.*, 998 F.3d 449, 457 (D.C. Cir. 2021) (citing *Henry Schein*, 586 U.S. at 69); Part I.E.2 below (collecting cases).

Third, even accepting the first two erroneous premises as true—which the District Court did for the sake of argument, *see* J.A.__[ECF.No.44.at.23-24, 27-28]—Global Voice fails to show that the District Court was clearly erroneous in its determination that there was no "clear and unmistakable" evidence of the parties intent to delegate the question at issue.

      1.    <u>FAA Delegation Principles Do Not Apply To The District Court's FSIA Subject Matter Jurisdiction Determination.</u>

Global Voice invokes delegation principles that derive from the FAA. *See, e.g., Henry Schein*, 586 U.S. at 65 ("The [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.") (citing *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); *First Options*, 514 U.S. at 943-44); *see also Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) ("[T]he FAA operates on this [delegation] agreement just as it does on any other [arbitration agreement].") (quoting *Rent–A–Center*, 561 U.S. at 70).

The issue in this case, however, is whether the District Court had subject matter jurisdiction under the FSIA, and the FAA "does nothing" with respect to federal court jurisdiction. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008). Rather, the FAA "requir[es] an independent jurisdictional basis." *Id*. In

a case against a foreign sovereign such as this, that independent jurisdictional basis is "sole[ly]" provided by the FSIA. *Amerada Hess*, 488 U.S. at 434.

This Court has repeatedly recognized the distinct and separate nature of the FSIA jurisdictional inquiry from the FAA confirmation inquiry. *See, e.g., Proc. & Indus. Dev. Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576, 585 (D.C. Cir. 2020) ("*P&ID I*") ("[The FAA] does not prevent a foreign sovereign from seeking what the FSIA guarantees—resolution of an immunity assertion before the sovereign can be compelled to defend the merits."); *P&ID II*, 27 F.4th at 772 (holding that a potential merits-based defense to confirmation under the New York Convention and the FAA "has no bearing on the district court's jurisdiction" under the FSIA).

Accordingly, this Court has consistently rejected arguments like the ones Global Voice makes in this case which "conflate[] the jurisdictional standard of the FSIA with the standard for review under the New York Convention." *Chevron*, 795 F.3d at 205. For example, in *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871 (D.C. Cir. 2021), this Court held that a party could not invoke arguments concerning the scope of the arbitration agreement at issue "to bolster its claim of sovereign immunity" under the FSIA, because such an arbitrability argument "is not a jurisdictional question under the FSIA." *Id*. at 878. Instead, this Court characterized that arbitrability argument as a possible "defense to confirmation

under the New York Convention [as codified by the FAA]." *Id*. Thus, this Court stated that invoking such a defense to confirmation under the FAA to support a sovereign immunity claim amounted to an improper conflation of "the jurisdictional standard of the FSIA with the standard for review under the New York Convention" as codified in the FAA. *Id*. (quoting *Chevron*, 795 F.3d at 205); *see also NextEra*, 112 F.4th at 1103-04.

Global Voice's delegation argument improperly conflates the FAA confirmation standard with the FSIA's separate jurisdictional standards in a similar manner. Every case that Global Voice cites in its delegation argument (with one exception)[9] examines the issue of delegation in the context of whether to confirm an arbitration award under the FAA—not of whether the court has subject matter jurisdiction under the FSIA. *See* Global Voice Br. at 36-43. For example, Global Voice urges this Court to follow the Second Circuit's decision in *Olin Holdings Ltd. v. Libya*, 73 F.4th 92 (2d Cir. 2023), Global Voice Br. at 41, but the court's subject matter jurisdiction under the FSIA was not at issue in *Olin Holdings*. Rather, the foreign sovereign Libya moved to dismiss only on *forum non conveniens* grounds, and otherwise chose to defend the merits of the petition to

_____

[9] The one exception is *Hulley Enterprises Ltd. v. Russian Federation*, No. 1:14-cv-1996, 2023 WL 8005099 (D.D.C. Nov. 17, 2023), which is currently pending appeal before this Court (Case No. 23-7174).

confirm the arbitral award under the FAA rather than contest the court's subject matter jurisdiction by asserting sovereign immunity from suit under the FSIA. *Olin Holdings*, 73 F.4th at 97. The Second Circuit's delegation analysis in *Olin Holdings* only relates to the FAA confirmation inquiry, and therefore, has no bearing in this case in which the District Court's FSIA subject matter jurisdiction is at issue.

The District Court noted this inapposite nature of Global Voice's caselaw in expressing skepticism about Global Voice's delegation argument. J.A.__[ECF.No.44.at.21] ("[Global Voice] cites no case in which a court deferred, over a foreign state's challenge, to an arbitrator's determination that the ***foreign state*** respondent (as opposed to the private petitioner) was a party to the arbitration agreement and thus subject to FSIA jurisdiction.") (emphasis in original). Ultimately, while the District Court declined to address the question of "whether a court may ever defer to an arbitrator's determination that the foreign state was a party to the underlying arbitration agreement given the FSIA's text," J.A.__[ECF.No.44.at.23], this Court should take this opportunity to clarify that such deference to the determination of an arbitral tribunal is not appropriate in the context of a court's inquiry into its own subject matter jurisdiction under the FSIA.

2.   Even Under FAA Principles, Parties Cannot Delegate The Question Of Whether An Arbitration Agreement Was Formed.

Even assuming that FAA delegation principles could constrain the District Court's inquiry into its own subject matter jurisdiction under the FSIA, the Supreme Court, this Court, and all sister circuits agree that the FAA does not permit parties to delegate to an arbitrator the antecedent question of whether an agreement to arbitrate exists.

In setting forth the delegation framework in *First Options*, the Supreme Court clarified that it is still the duty of the courts to "decid[e] whether the parties agreed to arbitrate a certain matter (including arbitrability)[.]" *First Options*, 514 U.S. at 944. The District Court recognized this rule, explaining that the *First Options* decision "instructed courts to 'independent[ly] review' whether a defendant to arbitration enforcement 'agree[d] to submit the question of arbitrability to arbitration' before deferring to an arbitrator's decision to enforce the underlying arbitration agreement against them." J.A.__[ECF.No.44.at.23] (quoting *First Options*, 514 U.S. at 947) (alterations in original). In subsequent delegation cases, the Supreme Court has continued to recognize this rule that "the court determines whether a valid arbitration agreement exists." *Henry Schein*, 586 U.S. at 69; *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010) (explaining that where "the formation of the parties' arbitration

agreement" is in dispute, "'the court' must resolve that disagreement") (quoting *First Options*, 514 U.S. at 943).

This Court has also articulated this rule in binding precedent, saying "the threshold question 'whether a valid arbitration agreement exists' [] is necessarily for 'the court to determine,' such that it ***cannot be delegated*** to an arbitrator[.]" *Dist. No. 1*, 998 F.3d at 457 (quoting *Henry Schein*, 586 U.S. at 69) (emphasis added; cleaned up). Every circuit which has considered this issue agrees that questions such as whether the Republic ever made an agreement to arbitrate with Global Voice must be resolved by the courts and cannot be delegated to arbitrators. *See, e.g., Ahlstrom v. DHI Mortg. Co.*, 21 F.4th 631, 635 (9th Cir. 2021) ("We agree with our sister circuits and hold that parties cannot delegate issues of [contract] formation to the arbitrator."); *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("[P]arties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place."); *see also Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021); *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 385-86 (6th Cir. 2020); *Nebraska Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 740-41 (8th Cir. 2014). In fact, the case of *Olin Holdings*, which Global Voice urges this Court to follow (*see* Global Voice Br. at 41), also clearly states this rule, saying that "[q]uestions concerning the formation and existence of an arbitration

agreement must be resolved by the courts in the first instance." *Olin Holdings*, 73 F.4th at 101.

This rule that the question of contract formation (and the formation of an agreement to arbitrate) cannot be delegated applies even where the agreement at issue contains a delegation clause. *See, e.g., Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1104 (10th Cir. 2020) ("Courts must [] first determine whether an arbitration agreement was indeed formed before enforcing a delegation clause therein."). Again, the District Court recognized this principle that even where the "arbitration agreement[] delegate[es] [] arbitrability questions to the arbitrator . . . the district court ha[s] to independently determine whether the defendant was a party to the agreement[.]" J.A.__[ECF.No.44.at.23] (citing *Microchip Tech., Inc. v. U.S. Phillips Corp.*, 367 F.3d 1350, 1358 (Fed. Cir. 2004)).

Global Voice does not acknowledge or attempt to defend its contrary assumption that the question of contract formation can be delegated. Yet this rule forecloses Global Voice's delegation argument. Thus, even if FAA delegation principles did control the District Court's determination of its subject matter jurisdiction under the FSIA, those delegation principles still prohibit the delegation of the question at issue—whether the Republic "made" an agreement to arbitrate with Global Voice within the meaning of 28 U.S.C. § 1605(a)(6).

3. Even If Delegation Were Available, The District Court Did Not Commit Clear Error.

While the District Court recognized the foregoing problems with the assumptions undergirding Global Voice's delegation argument, it assumed Global Voice's delegation argument was legally correct but ultimately rejected Global Voice's argument based on its findings of fact after evaluating the evidence. J.A.__[ECF.44.at.23] ("[A]t minimum, even if the FSIA permits such deference and the New York Convention requires it, the enforcing court must still independently determine whether there exists 'clear and unmistakable evidence' that the foreign state agreed to arbitrate arbitrability.") (citing *First Options*, 514 U.S. at 944). Instead, the District Court found that even accepting those assumptions *arguendo*, Global Voice did not show the requisite "clear and unmistakable" evidence that the Republic had agreed to delegate the question at issue to the Tribunal. J.A.__[ECF.44.at.27-28].

In the context of reviewing the District Court's immunity determination, this is a finding of fact which this Court reviews for clear error. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 197 (D.C. Cir. 2004). The clear error standard requires that this Court be "left with the definite and firm conviction that a mistake has been committed" in order to reverse a factual finding made by the District Court. *AT&T*, 916 F.3d at 1033 (quoting *Gypsum*, 333 U.S. at 395). Global Voice contends that that the District Court's finding was erroneous because

the requisite "clear and unmistakable" evidence of the Republic's intent to delegate can be inferred from two sources: the Partnership Agreement and the Republic's participation in the arbitration. Global Voice Br. at 36. Both of these assertions fail to satisfy the clear error standard for reversal.

First, Global Voice's circular contention that the Republic "delegated arbitrability to the Arbitral Tribunal by signing the Partnership Agreement and, through it, the Arbitration Agreement" incorporating the ICC Arbitration Rules assumes its own conclusion. Global Voice Br. at 36. The question of whether the Republic was a party to the Partnership Agreement cannot be resolved by looking to the terms of the Partnership Agreement itself.[10] As the District Court noted, Global Voice cites no cases in which "the defendant dispute[d] that they were a party to the agreement incorporating the arbitral rules." J.A.__[ECF.44.at.27]. Instead, Global Voice "has to first establish that [the Republic] agreed to incorporate the ICC rules by agreeing to the Arbitration Agreement that incorporates them," and Global Voice "has not done so." J.A.__[ECF.44.at.27].

---

[10] Indeed, the circularity of this argument exemplifies why the court always resolves questions regarding agreement formation and existence of an agreement to arbitrate in the first instance, as discussed in Part I.E.2 above.

Second, Global Voice contends that the requisite clear and unmistakable evidence of delegation can be inferred from the Republic's "later conduct throughout the arbitration[;]" specifically, the Republic's signing of the procedural "Terms of Reference" document and the Republic's general participation in the arbitration. Global Voice Br. at 38-41.

Beginning with the Terms of Reference argument, Global Voice's cited caselaw is again inapposite. None of the cases that Global Voice cites found that a party's act of signing the ICC Terms of Reference was clear and unmistakable evidence that the party agreed to delegate the question of whether it was a party to the underlying arbitration agreement. The Terms of Reference in this case also set forth the Republic's explicit reservation of its jurisdictional objections and that it "reserve[d] the right to assert these reservations against any awards to come." J.A.__[ECF.No.30-4.at.23-24]. The case of *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp. 3d 11 (D.D.C. 2023), *rev'd* —F.4th—, 2025 WL 1934050 (D.C. Cir. July 15, 2025) provides a useful contrast. In that case, the sovereign signed a Terms of Reference document which stated that the parties "agree[d] to submit to this arbitration and ***expressly waive[d] any procedural objections***" and that "[e]ach original of the Terms of Reference ***forms an original arbitration agreement***[.]" *Id.* at 35 (emphases added). In this case, however, the Terms of Reference explicitly reserved, rather than waived, the Republic's

48

objections to the arbitration and the Tribunal's jurisdiction and contained no language characterizing the Terms of Reference as an original arbitration agreement. J.A.__[ECF.No.30-4.at.23-24].

Global Voice's efforts to characterize the Republic's general participation in the arbitration as clear and unmistakable evidence of delegation fare no better. The District Court properly rejected this argument, noting that "the Supreme Court made clear in *First Options* that 'merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point.'" J.A.__[ECF.44.at.28] (quoting *First Options*, 514 U.S. at 946). The District Court thus concluded, that the Republic "has insisted from the jump that it was not a party to the Arbitration Agreement, and the fact that it made that argument before the Arbitration Tribunal weighs *against*, not in favor, of a finding of 'clear and unmistakable' agreement to arbitrate arbitrability." J.A.__[ECF.44.at.28] (emphasis in original).

Global Voice attempts to distinguish *First Options* by erroneously claiming that "[t]he parties opposing confirmation in *First Options* not only failed to sign Terms of Reference that delegated arbitrability; they also failed to raise any merits arguments." Global Voice Br. at 40 (citing *First Options*, 514 U.S. at 946). However, as recounted in the Third Circuit's decision, the parties opposing

confirmation in *First Options* "filed responses denying liability . . . [and] counterclaims against [the opposing party], each seeking $10,000,000 from First Options for breach of contract, interference with prospective business opportunities and libel and slander," in addition to also filing "written objections to the arbitrators' jurisdiction under the [] arbitration rules." *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1508 (3d Cir. 1994).

Even if *First Options* were distinguishable, however, this Court has already rejected Global Voice's argument in binding precedent, stating that a party who "participated fully" in an arbitration and "raised the question of arbitrability in the arbitration proceeding" has not forfeited the "right to have the arbitrator's determination subjected to judicial review." *Davis v. Chevy Chase Fin., Ltd.*, 667 F.2d 160, 163, 167-68 (D.C. Cir. 1981).

In sum, Global Voice's delegation argument should be rejected because it erroneously assumes both that FAA delegation principles can apply in the FSIA context, and that those same principles allow for the delegation of the question of formation of the arbitration agreement. Even accepting those erroneous assumptions, as the District Court did, Global Voice fails to show that the District Court was clearly erroneous in its finding that there was no clear and unmistakable evidence that the Republic intended to delegate the question at issue.

## II.    The District Court Correctly Declined To Exercise Subject Matter Jurisdiction Under The FSIA's Waiver Exception.

This Court should also affirm the District Court's holding that it did not have subject matter jurisdiction under the FSIA's waiver exception, which applies when "the foreign state has waived its immunity either explicitly or by implication[.]" 28 U.S.C. § 1605(a)(1). This statutory language "recognizes two species of waiver": explicit and implied. *Wye Oak*, 24 F.4th at 691. For both explicit and implied waiver, "the touchstone of the waiver exception remains the same: 'that the foreign state ha[s] *intended* to waive its sovereign immunity.'" *Ivanenko v. Yanukovich*, 995 F.3d 232, 239-40 (D.C. Cir. 2021) (quoting *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999)) (emphasis in original).

The standard for showing this requisite intent is demanding for both explicit and implied waiver. In fact, "courts rarely find that a nation has waived its sovereign immunity without ***strong evidence*** that this is what the foreign state intended." *Khochinsky v. Republic of Poland*, 1 F.4th 1, 8 (D.C. Cir. 2021) (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990)) (cleaned up; emphasis added).

For explicit waiver, "[a] foreign state will not be found to have explicitly waived its immunity unless it has clearly and unambiguously done so." *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984, 995 (D.C. Cir. 2023) (quoting *Wye Oak*,

24 F.4th at 691). Global Voice does not, and cannot, point to any explicit statements attributable to the Republic that constitute an explicit waiver of its sovereign immunity from suit before the District Court.

Instead, Global Voice attempts to argue that the Republic impliedly waived its sovereign immunity. This Circuit and the "'virtually unanimous' precedents" of its sister circuits have all "constru[ed] the implied waiver provision [of the FSIA] narrowly." *Wye Oak*, 24 F.4th at 691 (quoting *Creighton*, 181 F.3d at 122). Pursuant to this narrow interpretation, "an implied waiver depends upon the foreign government's having at some point indicated its amenability to suit." *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994). Global Voice claims that the requisite indication of the Republic's amenability to suit here can be inferred, because "a sovereign, by signing the New York Convention [and agreeing to arbitrate in a country that has also ratified the New York Convention], waives its immunity from arbitration-enforcement actions in other signatory states." Global Voice Br. at 52-53 (alteration in original) (quoting *Tatneft v. Ukraine*, 771 F. App'x 9, 10 (D.C. Cir. 2019)).

This Court has previously characterized similar attempts to invoke the implied waiver exception as "murky" and "unsettled[.]" *P&ID II*, 27 F.4th at 775 n.3; *NextEra*, 112 F.4th at 1100. This argument that a foreign sovereign impliedly waives its sovereign immunity by ratifying the New York Convention traces back

to the Second Circuit's decision in *Seetransport Wiking Trader v. Navimpex Centrala*, 989 F.2d 572, 578-79 (2d Cir. 1993). This Court recently acknowledged in *NextEra* that it has only approvingly cited this holding from *Seetransport* in dicta (*Creighton*) and in an unpublished opinion (*Tatneft*)—neither of which are precedential formal adoptions of the rule from *Seetransport*. *NextEra*, 112 F.4th at 1100.

On July 15, 2025, this Court issued its decision in *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, —F.4th—, 2025 WL 1934050 (D.C. Cir. July 15, 2025), a case that Global Voice argued was "related" to this case because it concerned the applicability of the waiver exception under the FSIA. *See* Global Voice Br. at i. In *Amaplat*, this Court rejected the argument that Global Voice made in its Opening Brief by declining to follow *Seetransport*'s application of the implied waiver exception to foreign judgment recognition claims. Global Voice Br. at 52-54; *Amaplat*, 2025 WL 1934050, at *5-6. In doing so, this Court stated that even where a foreign sovereign "signs the New York Convention and agrees to arbitrate, such conduct does not demonstrate an intent to waive immunity from judgment recognition actions." *Amaplat*, 2025 WL 1934050, at *6.

The *Amaplat* decision also reiterated that this Court has "made clear that, even after *Creighton* and *Tatneft*, we have not yet 'formally adopted' *Seetransport*'s conclusion that signing the New York Convention and agreeing to

arbitrate is even sufficient to waive immunity from award actions." *Id*. at *7 (citing *P&ID II*, 27 F.4th at 774; *NextEra*, 112 F.4th at 1100). Instead, this Court stated, "We once again leave that question 'for another day.'" *Id*. (quoting *NextEra*, 112 F.4th at 1100).

Today is not that day. This Court should reject Global Voice's invitation to take that question up here and wade into these "murky waters," *P&ID II*, 27 F.4th at 775 n.3, because as the District Court held, Global Voice's invocation of the waiver exception is inconsistent with *Seetransport* itself. The District Court reached this conclusion by observing that for the implied waiver exception to apply under *Seetransport*, *Tatneft*, and *Creighton*, there must be a finding that the foreign sovereign actually made an agreement to arbitrate. J.A.__[ECF.No.44.at.29-30] ("To put it even more simply: no arbitration agreement, no waiver.") (citing *Seetransport*, 989 F.2d at 574, 578-79; *Tatneft*, 771 F. App'x at 9; *Creighton*, 181 F.3d at 120).

As explained at length above, the Republic never made an agreement to arbitrate in this case—whether through the Partnership Agreement or through its participation in the Arbitration. *See* Part I above. The District Court therefore reasoned that applying the implied waiver exception here would not only adopt the holding from *Seetransport*—which this Court has been reluctant to do—but would also dramatically expand it. J.A.__[ECF.No.44.at.31] ("[T]his Court will not adopt

an even more permissive [waiver] rule than the unpublished decision in *Tatneft* or the other caselaw holds."). Such a dramatic expansion would be inconsistent with this Court's command that the implied waiver exception under the FSIA should be interpreted "narrowly." *Creighton*, 181 F.3d at 122. This Court should affirm the District Court's reasoning and reject Global Voice's argument.

## CONCLUSION

For the foregoing reasons, the District Court's February 18, 2025 Order (J.A.__[ECF.No.43]) and Memorandum Opinion (J.A.__[ECF.No.44]) should be affirmed.


Dated:       July 17, 2025                     Respectfully submitted,

                                              HUGHES HUBBARD & REED LLP

                                               */s/ James H. Boykin, III*

                                              James H. Boykin, III (admitted)
                                              Carter Rosekrans (admitted)
                                              Winthrop Jordan (admitted)
                                              Kayahan Cantekin (on brief)
                                              1775 I Street, N.W.
                                              Washington, D.C.  20006-2401
                                              Telephone: (202) 721-4600
                                              Facsimile: (202) 721-4646
                                              james.boykin@hugheshubbard.com
                                              carter.rosekrans@hugheshubbard.com
                                              winthrop.jordan@hugheshubbard.com
                                              kayahan.cantekin@hugheshubbard.com

                                              *Counsel for the Republic of Guinea*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1) and Fed. R. App. P. 32(a)(7)(B), I hereby certify that this brief complies with the type-volume limitation because it contains 12,358 words. I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:     July 17, 2025          */s/ James H. Boykin, III*

James H. Boykin, III
1775 I Street, N.W.
Washington, D.C.  20006-2401
Telephone: (202) 721-4600
Facsimile: (202) 721-4646
james.boykin@hugheshubbard.com

*Counsel for the Republic of Guinea*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of July 2025, I electronically filed the foregoing brief using the CM/ECF system, which served all counsel of record registered with the CM/ECF system. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated:     July 17, 2025      _/s/ James H. Boykin, III_

James H. Boykin, III
1775 I Street, N.W.
Washington, D.C.  20006-2401
Telephone: (202) 721-4600
Facsimile: (202) 721-4646
james.boykin@hugheshubbard.com

*Counsel for the Republic of Guinea.*